IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,    )
                                    )    Criminal Action No.
       Plaintiff,            )    1:07-CR-311-RWS
                                      )
v.                               )
                                      )
MARLANDOW JEFFRIES,       )
                                    )
       Defendant.         )

## MAGISTRATE JUDGE'S ORDER AND REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion to Suppress Evidence Seized on January 25, 2007, Motion to Suppress Statements, Motion to Sever Counts, and Motion to Suppress Evidence Seized on June 5, 2007. Docket Entries [13,14,16, 17]. The Government has filed responses in opposition to Defendant's motions. Docket Entries [54, 55]. An evidentiary hearing was held on May 15, 2008. Docket Entry [52]. For the reasons set forth below, it is **RECOMMENDED** that Defendant's Motions to Suppress be **DENIED**. Docket Entries [13, 14, 17]. Defendant's Motion to Sever Counts is also **DENIED**. Docket Entry [16].

## BACKGROUND FACTS

On September 13, 2007, a grand jury in the Northern District of Georgia returned

a seven-count indictment against Defendant. Docket Entry [2]. The indictment alleges that Defendant (1) a convicted felon, knowingly possessed a firearm in violation of 18 U.S.C. § 922(g) (Counts One and Four), (2) knowingly and intentionally possessed with intent to distribute a mixture and substance containing cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 851 (Count Two), (3) knowingly and intentionally possessed with intent to distribute a mixture containing marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 851 (Count Three), (4) did, by use of a deadly and dangerous weapon, forcibly assault, resist, oppose, impede, intimidate, and interfere with a federal officer engaged in the performance of his official duties in violation of 18 U.S.C. § 111 (Count Five), (5) used and brandished a firearm during and in relation to a crime of violence and a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count Six), and (6) knowingly possessed a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(I) (Count Seven). (Id. at 1-4). The indictment also includes a drug forfeiture provision. (Id. at 5-6).

Defendant made his initial appearance in federal court on September 20, 2007, entering a plea of not guilty. Docket Entry [8]. Defendant was detained by the Court. Docket Entry [10]. The Court scheduled an evidentiary hearing regarding Defendant's pending suppression and severance motions on May 15, 2008. (See Transcript of

2

Suppression Hearing ("Tr. "), Docket Entry [52]).

## **MOTION TO SEVER COUNTS**

Defendant contends that the Indictment improperly joins Count One with other counts that involve separate and distinct incidents in violation of Rule 8(a) of the Federal Rules of Criminal Procedure. Defendant also argues that the joinder of the counts in the Indictment is prejudicial such that the jury would not be able to follow a trial court's limiting instructions. Responding in opposition, the Government argues that it properly joined Count One with the other counts in the Indictment, and that Defendant's generalized prejudice claim fails. This Court agrees with the Government.

Rule 8(a) of the Federal Rules of Criminal Procedure permits the joinder in an indictment of "2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." FED. R. CRIM. P. 8(a); see also United States v. Dominguez, 226 F.3d 1235, 1238 (11th Cir. 2000). Defining the outer limits of what counts an indictment may join, Rule 8 is broadly construed in favor of the initial joinder because of the efficiency of trying the defendant on related counts in the same trial. Id.; United States v. Mackins, 315 F.3d 399, 412 (4th Cir. 2003); United States v. Stokes, 211 F.3d 1039, 1042 (7th Cir. 2000). "Rule 8(a) is not limited to crimes of the same

3

character, but also covers those of similar character, which means nearly corresponding; resembling in many respects; somewhat alike; having a general likeness." <u>United States v. Walser</u>, 3 F.3d 380, 385 (11th Cir. 1993) (citations and internal quotation marks omitted). Before trial, a court addressing the propriety of an initial joinder under Rule 8 may examine the allegations stated on the face of the indictment and proffers of evidence by the Government. <u>United States v. Weaver</u>, 905 F.2d 1466, 1476-77 (11th Cir. 1990) (addressing joinder under Rule 8(b)). Even when an indictment has properly joined two or more counts under Rule 8, a court, in its discretion, may sever the offenses under Rule 14 where it appears that the joinder of the offenses will likely prejudice either the defendant or the government.[1] <u>United States v. Buchanon</u>, 930 F. Supp. 657, 667 (D.Mass. 1996). However, the Supreme Court has admonished that when joinder is proper "under [Rule 8], a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would . . . prevent the jury from making a reliable

---

[1]Federal Rule of Criminal Procedure 14 provides:

[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

FED. R. CRIM. P. 14(a).

judgment about guilt or innocence." <u>Zafiro v. United States</u>, 506 U.S. 534, 539 (1993) (addressing severance under Rule 14 to indictment joining multiple defendants); <u>see also</u> <u>United States v. Cardwell</u>, 433 F.3d 378, 387 (4th Cir. 2005) (quoting <u>Zafiro</u> when addressing severance, under Rule 14, of two charges against one defendant in indictment). Accordingly, a defendant must demonstrate that absent severance, a joint trial will result in a miscarriage of justice. <u>United States v. Friedman</u>, 854 F.2d 535, 563 (2nd Cir. 1988). The district court, then, has a duty to weigh the prejudice resulting from a single trial of counts against the expense and inconvenience of separate trials. <u>United States v. Perkins</u>, 926 F.2d 1271, 1280 (1st Cir. 1991); <u>United States v. Cardall</u>, 885 F.2d 656, 667 (10th Cir. 1989).

Applying the law to the facts of this case, this Court finds that the Indictment against Defendant properly joins Count One with the other counts set forth therein. In the seven-count Indictment, Defendant is charged with two counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Counts One and Four), two counts of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841 (Counts Two and Three), one count of aggravated assault of a federal officer (Count Five), one count of possession of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924 (c), and one count of

5

possession of a firearm during and in relation to a drug trafficking offense. The seven counts arise out of two separate incidents that occurred on January 25, 2007, and June 5, 2007. The offense charged in Count One, possession of a firearm by a convicted felon, is of the same or similar character as Count Four, possession of a firearm by a convicted felon. Both counts require proof of the same prior convictions. Accordingly, the counts are properly joined. Furthermore, to the extent Defendant seeks severance of Count One under Rule 14 of the Federal Rules of Criminal Procedure, this Court finds that Defendant has failed to carry his burden. Defendant makes only a generalized claim to possible prejudice from the joinder of counts. Defendant simply argues that "there is ample risk that given the prejudicial nature of the June 5, 2007 incident, the jury would not be able to follow the trial court's limiting instructions." (See Def. Br. at 9). Because Rule 14 of the Federal Rules of Criminal Procedure requires a compelling, specific, or actual allegation of prejudice to justify severing a count from an indictment, and because Defendant has failed to show that the joinder of these counts will prejudice him at trial, Defendant's Motion to Sever Count One is **DENIED**. Docket Entry [16].

## MOTIONS TO SUPPRESS

Defendant seeks to suppress evidence from his encounters with law enforcement on January 25, 2007, and June 5, 2007. Defendant also seeks to suppress any statements

6

that he may have provided to law enforcement officers.

## A. **Factual Background**

### 1. **January 25, 2007 Search and Seizure**

On January 25, 2007, Atlanta Police Department ("APD") Officers Roderick Bowens and Jeffrey Gunter conducted a roadblock at the intersection of Metropolitan and Fair in Atlanta, Georgia. (Tr. at 7, 22). The purpose of the roadblock was to check drivers' licenses and proofs of insurance. (Tr. at 7). The officers were standing in the street on Metropolitan when they observed a silver Ford Expedition moving through traffic. (Tr. at 8). The driver of the silver Ford Expedition moved through traffic, and instead of stopping so that APD Officer Scott could check for a driver's license, the vehicle continued through the roadblock hitting Officer Scott. (Tr. at 9). After the silver Ford Expedition struck Officer Scott and left the scene, Officer Bowens, members of the APD's Red Dog Unit, and an air police unit pursued the vehicle to a residence located at 2095 Waters Road. (Tr. at 9). After arriving at the 2095 Waters Road residence, Officers Bowens and Gunter saw the driver of the silver Ford Expedition exit the vehicle with a coffee can in his hand and run into the residence. (Tr. at 9). The officers entered the residence in pursuit of the driver, later identified as Defendant. (Tr. at 10). The officers entered the residence to arrest Defendant for aggravated assault on a police

officer. (Tr. at 10). The officers did a cursory sweep of the downstairs area of the residence, and then proceeded toward the attic area. (Tr. at 10). The officers saw an opening in a crawl space in the attic. (Tr. at 10). Officer Bowens peeked into the crawl space and saw legs and shoes. (Tr. at 10). Officer Bowens ordered Defendant to come out of the crawl space. (Tr. at 10). Defendant complied with Officer Bowens' command and exited the crawl space. (Tr. at 11). Officer Bowens testified that after Defendant crawled out of the crawl space, he lunged toward the bedroom. (Tr. at 11). Officer Bowens noticed a firearm within the threshold of the doorway, approximately one to two feet away from Defendant. (Tr. at 11). Officer Bowens testified that on seeing the firearm, he yelled "gun" to the other officers who assisted Officer Bowens in tackling, detaining, and taking Defendant into custody. (Tr. at 11). As the officers were bringing Defendant downstairs, Officer Gunter recovered the firearm. (Tr. at 11). While downstairs, Officer Bowens noticed the coffee can that Defendant was carrying when he ran into the residence sitting on the kitchen counter top. (Tr. at 11, 19). Officer Bowens opened the container and discovered drugs and money. (Tr. at 12). Defendant was arrested and charged with aggravated assault, trafficking cocaine, possession of marijuana, possession of a firearm by a convicted felon, and obstruction. (Tr. at 12; Gov't Exs. 1 & 2).

AO 72A
(Rev.8/82)

## 2. <u>June 5, 2007 Search and Seizure</u>

In March 2007, an arrest warrant was issued by the Fulton County Superior Court based on Defendant's failure to appear in court for a hearing regarding his January 2007 arrest. APD Task Force Officer S. Oliver ("Officer Oliver") attempted to execute the arrest warrant on June 5, 2007. (Tr. at 48). An arrest team was assembled, and surveillance of the 2905 Waters Road residence was conducted. (Tr. at 48). APD Officer William Munson was assigned to the arrest team. (Tr. at 33). Once given the signal that Defendant was at the 2905 Waters Road residence, Officer Munson and two other officers drove to the location and exited their vehicle. (Tr. at 33). Officer Munson testified that on arrival, they observed two men, one of whom was Defendant, in front of the residence. (Tr. at 33). Defendant and the other man walked toward Officer Munson's vehicle to see who was inside. (Tr. at 33). On observing that it was the police, Defendant began running toward the front door of the residence. (Tr. at 33). Officer Munson pursued Defendant, yelling "Police!" (Tr. at 33). When Officer Munson arrived at the front door, he saw Defendant walking to the door with a gun yelling, "Not in my house, not in my house!" (Tr. at 33). After seeing Defendant coming toward him with a firearm, Officer Munson yelled "Police" three more times. (Tr. at 34). At that point, Defendant stopped, and appeared as though he was going to run to the back

9

of the house. (Tr. at 34). Officer Munson left the porch and ran around the side of the house. (Tr. at 34). Officer Munson testified that he had gone halfway around the side of the house when he noticed the gun that Defendant was holding at the front door was now being pointed out the window at him. (Tr. at 34). The officers apprehended Defendant, and performed a protective sweep of the residence. (Tr. at 35). Officer Munson observed a firearm on the floor of a closet in a downstairs bedroom, the same room where the firearm had been pointed out the window. (Tr. at 35).

After Defendant's arrest, TFA Scott Oliver filed an affidavit and application for a search warrant with a Fulton County Magistrate Judge. (Tr. at 54; Docket Entry [53-2]). The search warrant was issued at 5:39 p.m. Docket Entry [53-2]. A search of Defendant's residence revealed two firearms, cocaine, marijuana, and $2,229.00 in cash. (Tr. at 41).

### 3.    June 5, 2007 Statements

ATF Special Agent ("SA") Eric Degree testified that he was present and assisting TFA Oliver with the investigation and arrest of Defendant on June 5, 2007. (Tr. at 41). SA Degree testified that while waiting for a warrant to search Defendant's residence, Defendant indicated several times that he wanted to talk to SA Degree later. (Tr. at 41). Defendant was in custody at that time. (Tr. at 41). SA Degree did not question

10

Defendant at that time. (Tr. at 41). Later that evening, SA Degree spoke with Defendant in the kitchen of the residence. (Tr. at 42). Officer Oliver and ATF SA Pete Beck were also in the kitchen or the general area when Defendant was advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). (Tr. at 42). Defendant did not appear to be under the influence of drugs or alcohol, instead, he appeared alert and engaged. (Tr. at 42). Defendant verbally waived his Miranda rights but refused to sign a written waiver. (Tr. at 42). After waiving his Miranda rights, Defendant admitted that the firearms, marijuana, and cocaine found inside the residence belong to him. (Tr. at 42). SA Degree asked Defendant whether he owned a shotgun because one of the officers had found a shotgun shell; Defendant said no. (Tr. at 42). SA Degree also asked Defendant if he could provide information regarding other crimes and individuals engaging in crimes. (Tr. at 42-43 ). Defendant responded that he did not want to snitch on anybody until he had a lawyer and saw something in writing. (Tr. at 43). Defendant was not asked anymore questions.

**B.     Legal Discussion**

**Motion to Suppress Evidence Seized on January 25, 2007**

Defendant contends that his arrest, the search, and subsequent seizure of evidence on January 25, 2007 was in violation of the Fourth Amendment. The Government

11

argues that Defendant's arrest and search were supported by probable cause. This Court agrees with the Government.

    1.    <u>Defendant's Arrest</u>

The constitutional validity of a warrantless arrest is contingent upon whether the arresting officers had probable cause at the time of the arrest. <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." <u>United States v. Gonzalez</u>, 969 F.2d 999, 1002 (11th Cir. 1992); <u>United States v. Lindsey</u>, 482 F.3d 1285, 1291 (11th Cir. 2007); <u>see also</u> <u>United States v. Blasco</u>, 702 F.2d 1315, 1324 (11th Cir. 1983) ("Probable cause to arrest exists where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed."). A determination of probable cause must be made by considering the "totality of the circumstances." <u>Illinois v. Gates</u>, 462 U.S. 213, 233 (1983); <u>United States v. Lyons</u>, 403 F.3d 1248, 1253 (11th Cir. 2005). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person

12

to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002) (citation and internal quotation marks omitted). Additionally, law enforcement officials "may draw inferences based on [their] own experience in deciding whether probable cause exists." Ornelas v. United States, 517 U.S. 690, 700 (1996).

This Court concludes that probable cause existed, based on the totality of the circumstances, to justify Defendant's warrantless arrest for aggravated assault on a police officer. Defendant was observed by APD officers driving a silver Ford Expedition that failed to stop at a roadblock. (Tr. at 8). Instead of stopping and allowing Officer Scott to check his driver's license, Defendant continued through the roadblock, hitting Officer Scott. (Tr. at 9). After striking Officer Scott and leaving the scene, Officer Bowens, Officer Munson, other APD officers, and an air police unit pursued Defendant to 2095 Waters Road. (Tr. at 9). These circumstances justify Defendant's arrest for aggravated assault. Furthermore, Defendant's subsequent conduct, described more fully below, lends additional support to a finding of probable cause to arrest. This Court also finds that the warrantless entry into Defendant's residence was reasonable based on exigent circumstances.

13

The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: 'The right of the people to be secure in their . . . houses . . . shall not be violated.' That language unequivocally establishes the proposition that "[at] the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." Payton v. New York, 445 U.S. 573, 589-90 (1980) (citing Silverman v. United States, 365 U.S. 505, 511 (1961)). In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant. McClish v. Nugent, 483 F.3d 1231, 1240-41 (11th Cir. 2007).

A warrantless entry into a home is therefore unreasonable, subject only to a few "jealously and carefully drawn" exceptions. Georgia v. Randolph, 547 U.S. 103, 109 (2006) (quoting Jones v. United States, 357 U.S. 493, 499 (1958)). Consent provides one exception to the warrant requirement. See Illinois v. Rodriguez, 497 U.S. 177, 181 (1990); United States v. Edmondson, 791 F.2d 1512, 1515 (11th Cir. 1986). A second

exception to the warrant requirement is made for "exigent circumstances," or situations in which "the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." United States v. Burgos, 720 F.2d 1520, 1526 (11th Cir. 1983). Thus, for example, courts have upheld exigent circumstances entries to break up a violent fight, Brigham City, Utah v. Stuart, -- U.S. --, 126 S.Ct. 1943, 1949 (2006), to prevent the destruction of evidence, United States v. Mikell, 102 F.3d 470, 476 (11th Cir. 1996), and to pursue a fleeing suspect, United States v. Santana, 427 U.S. 38, 42-43 (1976). Under either consent or exigent circumstances, an officer who conducts a warrantless search or seizure inside the home bears the burden of proving that his conduct was justified. See Sammons v. Taylor, 967 F.2d 1533, 1543 (11th Cir. 1992).

Although Defendant argues no specific exception to the warrant requirement allowed a warrantless entry into his home or the warrantless search that followed, this Court is not persuaded. The Government has carried its burden of proving that exigent circumstances justified the officers pursuit of Defendant into his home. As previously discussed, Officer Bowens and other APD officers observed Defendant hit Officer Scott in a public place, a roadblock, which provided probable cause for his arrest. In an effort to evade a lawful arrest, Defendant left the scene and drove home. Contrary to Defendant's assertion, this Court does not find that the pursuing officers either should

15

have or had time to set up a perimeter and secure a warrant. The officers entered Defendant's residence in hot pursuit of a fleeing suspect who they observed commit a criminal offense. The fact that Defendant decided to flee to his residence does not convert the lawful pursuit into an unreasonable and unlawful governmental intrusion. "[A] suspect may not defeat an arrest which has been set in motion in a public place . . . [by] escaping to a private place." Santana, 427 U.S. at 43; McClish, 483 F.3d at 1243-47. Accordingly, Defendant's arrest inside of his residence falls within one of the recognized exceptions to the requirement for a search warrant, and was lawful.

2.     Validity of the Search of 2095 Waters Road

Defendant claims that the warrantless search of the 2095 Waters Road residence and the subsequent seizure were unconstitutional. However, this argument also fails. Officer Bowens and Officer Gunter testified that they observed Defendant crawling out of the crawl space reaching for a nearby weapon in plain view.[2] An officer may seize

_____

[2]Although the officers' testimony differed as to the manner in which Defendant crawled out of the crawl space, due to the distance that the firearm was from Defendant and the number of officers who saw the firearm, this Court finds the officers' testimony credible. To the extent that Defendant attempts to argue that the officers testimony was contradictory to testimony provided by Defendant's girlfriend, Priscilla Jackson, Defendant's argument fails. Ms. Jackson testified that she and Defendant's son were in the room where Defendant was arrested earlier that evening. (Tr. at 66). However, Ms. Jackson admitted that she did not *see* a weapon when she was in the room earlier that evening. (Tr. at 66). Ms. Jackson also admitted that she was neither present in the room

16

evidence that is in plain view. The "plain view" doctrine allows a warrantless seizure where "(1) an officer [was] lawfully located in the place from which the seized object could be plainly viewed and [had] a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." U.S. v. Alim, 256 F.App'x. 236, 238 (11th Cir. 2007) (citing United States v. Smith, 459 F.3d 1276, 1290 (11th Cir. 2006), cert. denied, -- U.S.--, 127 S.Ct. 990 (2007)).

In this case, the firearm was properly seized from Defendant as a result of his lawful arrest. The officers observed a dangerous weapon in plain view while attempting to arrest Defendant for aggravated assault. Given the exigent circumstances entry into the residence by the officers, coupled with the "plain view" exception to the Fourth Amendment's warrant requirement, the corresponding seizure of the firearm was constitutional. Therefore, this Court **RECOMMENDS** that Defendant's Motion to Suppress Evidence Seized on January 25, 2007 be **DENIED**. Docket Entry [13].

### Motion to Suppress Evidence Seized on June 5, 2007

Defendant also seeks to suppress evidence seized on June 5, 2007, arguing that the officers' search and seizure exceeded the scope of the warrant. In response, the

---

nor upstairs when Defendant was arrested. (Tr. at 66). Accordingly, Ms. Jackson was not in a position to contradict the officers' testimony.

Government argues that the warrant was supported by probable cause. This Court agrees.

The evidence revealed that an arrest warrant for Defendant was issued in March 2007 based on his failure to appear for a hearing regarding his January 2007 arrest. An arrest warrant permits the arresting officer to enter a suspect's home where the officer has reason to believe the suspect is there. Payton, 445 U.S. at 603; United States v. Magluta, 44 F.3d 1530, 1533 (11th Cir. 1995). Reasonable belief to enter a residence to execute an arrest warrant for a resident of the premises must be supported by "facts and circumstances within the knowledge of the law enforcement agents, [that] when viewed in the totality, . . . warrant[s] a reasonable belief that the location to be searched is the suspect's dwelling, and that the suspect is within the residence at the time of entry." Magluta, 44 F.3d at 1535.

Applying the law to the facts of this case, both Defendant's arrest, and the subsequent search and seizure, were lawful. After arresting Defendant, Officer Munson performed a protective sweep of the residence, and observed a gun on the floor of a bedroom closet. (Tr. at 35). Following Defendant's arrest, Officer Oliver applied for a search warrant with a Fulton County Magistrate Judge. (Tr. at 54; Docket Entry [53-1]). A search warrant was issued after a finding of probable cause. Docket Entry [53-1].

AO 72A
(Rev.8/82)

This Court finds that the evidence seized was within the scope of the search warrant.

Evidence seized by an officer engaging in a search beyond the scope of the search warrant may be excluded. See Horton v. California, 496 U.S. 128, 140 (1990). However, the extra-warrant seizure of items does not *per se* invalidate an otherwise valid search, especially if those extra-warrant items are not received into evidence against the defendant. United States v. Schandl, 947 F.2d 462, 465 (11th Cir. 1991) (citing United States v. Henson, 848 F.2d 1374, 1383 (6th Cir. 1988), cert. denied, 488 U.S. 1005 (1989)). Rather, the decision to invalidate a search and to exclude the evidence turns on "whether the search and seizures were reasonable under all the circumstances." United States v. Wuagneux, 683 F.2d 1343, 1352 (11th Cir. 1982), cert. denied, 464 U.S. 814 (1983). The determination of the reasonableness of the search should be based on things like "the scope of the warrant, the behavior of the searching agents, the conditions under which the search was conducted, and the nature of the evidence being sought." Schandl, 947 F.2d at 465 (citing Wuagneux, 683 F.2d at 1352; United States v. Heldt, 668 F.2d 1238, 1254 (D.C. Cir. 1981), cert. denied, 456 U.S. 926 (1982)).

The search warrant obtained by Officer Oliver authorized the officers to search the property located at 2095 Waters Road for the following:

[f]irearms, cocaine, monies derived from the sale of cocaine, and/or any

contraband relevant to the investigation. The search to include the curtilage, outbuildings and vehicles contained on the property [for a violation] of 16-11-131, possession of a firearm by a convicted felon-posses [sic].

Docket Entry [53-2].

The search warrant also provided facts supporting the magistrate judge's probable cause determination. In the application and affidavit, Officer Oliver describes his law enforcement experience, Officer Munson's observations of a firearm and a white powdery substance inside the residence, Defendant's felony convictions, Defendant's outstanding warrants for felony drug possession, Defendant's use of surveillance cameras at the residence, and Defendant's brandishing of a firearm. Based on this information, the Fulton County Magistrate Judge had a substantial basis for a probable cause finding that firearms, cocaine, monies derived from the sale of cocaine, and/or contraband were located within the residence. See, e.g., United States v. Kirk, 781 F.2d 1498, 1505-06 (11th Cir. 1986) (holding that affidavit provided a substantial basis from which to conclude that the agents had probable cause to believe cocaine might be found in the residence). Not only was there probable cause for the Fulton County Magistrate Judge to issue the warrant, there was no evidence presented that indicated that the scope of the search exceeded the scope of the warrant. Accordingly, this Court finds that the

search and seizure was reasonable. Therefore, this Court **RECOMMENDS** that Defendant's Motion to Suppress Evidence Seized on June 5, 2007 be **DENIED**. Docket Entry [17].

### Motion to Suppress Statements

Lastly, Defendant contends that his statements were not knowingly and voluntarily made because he was never advised of his <u>Miranda</u> rights. In response, the Government argues that Defendant's statements are admissible under <u>Miranda</u>.

The Fifth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibit the use of an involuntary confession against a defendant in a criminal trial. U.S. CONST. amend. V; U.S. CONST. amend. XIV, cl. 3; <u>Dickerson v. United States</u>, 530 U.S. 428, 434-35 (2000); <u>Bram v. United States</u>, 168 U.S. 532, 542, (1897); <u>United States v. Vera</u>, 701 F.2d 1349, 1365 (11th Cir. 1983). When the government seeks to use a confession obtained through custodial interrogation against a defendant, it must demonstrate that the defendant voluntarily, knowingly, and intelligently waived his Fifth Amendment rights under <u>Miranda</u>. <u>Miranda</u>, 384 U.S. at 475; <u>Hart v. Florida</u>, 323 F.3d 884, 891 (11th Cir. 2003). Whether a waiver was voluntary, knowing, and intelligent presents a two-fold inquiry. Courts assess the voluntariness of the defendant's relinquishment of his rights to see if "it was the product

AO 72A
(Rev.8/82)

of a free and deliberate choice rather than intimidation, coercion, or deception." <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986); <u>see also</u> <u>Hart</u>, 323 F.3d at 892. To determine whether the relinquishment was knowing and intelligent, courts must determine whether the waiver was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." <u>Burbine</u>, 475 U.S. at 421. A court may only hold that a defendant validly waived his Fifth Amendment rights under <u>Miranda</u> if it finds that "the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension." <u>Id.</u>

The totality of the circumstances test takes into consideration both the characteristics of the accused and the details of the interrogation to determine whether police conduct was causally related to the confession. <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226 (1973); <u>see also</u> <u>Haynes v. Washington</u>, 373 U.S. 503, 513 (1963); <u>Reck v. Pate</u>, 367 U.S. 433, 440 (1961) ("[A]ll the circumstances attendant upon the confession must be taken into account."). The court reviews numerous factors under this analysis, including the accused's intelligence, education, age, drug and alcohol use, psychological problems, and prior experience with the criminal justice system, as well as the length of the detention, the nature of the interrogation, the application of physical

force or the threat thereof, and the use of a promise or inducement by police. <u>Hubbards v. Haley</u>, 317 F.3d 1245, 1253 (11th Cir. 2003) (citing <u>United States v. Garcia</u>, 890 F.2d 355, 360 (11th Cir. 1989)). The court must find government coercion in order to conclude that a waiver was involuntary. "Absent police conduct causally related to the confession, there is . . . no basis for concluding that any state actor has deprived a criminal defendant" of his rights. <u>Colorado v. Connelly</u>, 479 U.S. 157, 164 (1986); <u>United States v. Barbour</u>, 70 F.3d 580, 585 (11th Cir. 1995).

Applying the law to the facts of this case, this Court finds that the Government established during the evidentiary hearing that Defendant's statements were not obtained in violation of either the Constitution or <u>Miranda</u>. On June 5, 2007, when Defendant yelled "Not in my house, not in my house!", Defendant was inside his residence and was not in custody. (Tr. at 33). Although Officer Munson was in pursuit of Defendant, he did not ask Defendant any questions. (Tr. at 34-35). Because Defendant was neither in custody nor subject to any custodial interrogation, the procedural safeguards of <u>Miranda</u> had not yet attached.

In addressing other statements made by Defendant on June 5, 2007, this Court finds that Defendant knowingly, voluntarily, and intelligently waived his <u>Miranda</u> rights. During the evidentiary hearing, SA Degree testified that after Defendant was arrested he

indicated several times that he wanted to speak to SA Degree later. (Tr. at 41). Prior to being informed of his <u>Miranda</u> rights, Defendant appeared alert, engaged, and not under the influence of drugs or alcohol. (Tr. at 42, 49). Although Defendant refused to sign a written waiver, this fact does not invalidate the voluntariness of Defendant's waiver. <u>See</u> <u>Mincey v. Head</u>, 206 F.3d 1106, 1131-32 (11th Cir. 2000). This Court finds that SA Degree provided credible testimony that he verbally advised Defendant of his <u>Miranda</u> rights prior to Defendant speaking to him. After being informed of his <u>Miranda</u> rights, Defendant knowingly, voluntarily, and intelligently waived his rights and agreed to speak with SA Degree. The circumstances of Defendant's interrogation do not provide any reason to think that Defendant's waiver was involuntary. Accordingly, this Court finds that under the totality of the circumstances, Defendant's statements were not obtained in violation of <u>Miranda</u>. Therefore, this Court **RECOMMENDS** that Defendant's Motion to Suppress Statements be **DENIED**. Docket Entry [14].

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Sever is **DENIED**. Docket Entry [16]. This Court also **RECOMMENDS** that Defendant's Motion to Suppress Evidence Seized on January 25, 2007, Motion to Suppress Statements, and Motion to Suppress Evidence Seized on June 5, 2007 be **DENIED**. Docket Entries [13, 14, 17].

24

There are no further motions or problems pending before the undersigned to prevent the scheduling of this case for trial. Therefore, this action is **CERTIFIED READY FOR TRIAL**.

**SO ORDERED, REPORTED AND RECOMMENDED** this 7th day of August, 2008.

s/Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)